Reginald Derwin BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–97–00332–CR.

Court of Appeals of Texas,
Tyler.

May 26, 1999.

Rehearing Overruled June 15, 1999.

Discretionary Review Refused
Oct. 20, 1999.

Gary A. Udashen, Dallas, for appellant.

Jack Skeen, Jr., Edward J. Marty, Tyler, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

A jury convicted Reginald Derwin Brown ("Brown") of the offense of sexual assault of a child. TEX. PEN.CODE ANN. § 22.011(a)(2)(A) (Vernon 1994 & Supp. 1999). The trial judge sentenced Brown to eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In eleven issues, Brown appeals his conviction and sentence. We will affirm the trial court's judgment.

## I. FACTUAL BACKGROUND

Brown was charged with the offense of sexual assault of a child alleging that the assault occurred on or about August 26, 1993. The complainant, F. M., testified at trial that Brown had sexual intercourse with her on four separate occasions during a period from May to August of 1993. F.M. testified that the first encounter occurred between May 17 and when school let out for the summer, that the second encounter occurred a few days or a couple of weeks after the first encounter, and that the third occurred one and one-half months after the second. F.M. testified that the last encounter occurred somewhere around August 26, 1993. During

this time, F.M. attended Grace Tabernacle Church where Brown was the pastor.

## II. GUILT–INNOCENCE PHASE

### A. Ineffective Assistance of Counsel

In issues one and two, Brown contends that he was denied the effective assistance of counsel at the guilt-innocence phase of the trial in violation of the United States and Texas Constitutions. Specifically, Brown argues that his counsel was ineffective because he failed to properly object to the admission of extraneous offenses, to ask for an election between various offenses, or to request an instruction limiting the purpose for which extraneous offenses could be considered. We will address these issues together.

A defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Cr.App.1991). However, a defendant is not entitled to errorless counsel or counsel whose competency is judged by hindsight. *Stafford,* 813 S.W.2d at 506; *Calderon v. State,* 950 S.W.2d 121, 126 (Tex.App.—El Paso 1997, no pet.). With respect to the guilt-innocence phase of a trial, the proper standard for determining claims of ineffective assistance under the Sixth Amendment is the two-step analysis adopted by the Supreme Court of the United States in *Strickland v. Washington. Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Cr.App.1992). The *Strickland* analysis also applies to claims arising under article one, section 10 of the Texas Constitution. *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Cr.App.1986).

Under the first prong, the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Cr.App.1994). The defendant must demonstrate that his attorney's representation fell below an ob-

jective standard of reasonableness under prevailing professional norms. *Vasquez,* 830 S.W.2d at 949. Under the second prong, the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Jackson,* 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson,* 877 S.W.2d at 771; *Hernandez,* 726 S.W.2d at 55. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson,* 877 S.W.2d at 771.

When a claim of ineffective assistance of trial counsel is reviewed by this Court, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and the appellant must overcome the presumption that the challenged conduct can be considered sound trial strategy. *Jackson,* 877 S.W.2d at 771; *Calderon,* 950, S.W.2d at 126. Consequently, allegations of ineffectiveness of counsel must be firmly founded in the record. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Cr.App. 1983); *Calderon,* 950, S.W.2d at 126. Further, ineffectiveness of counsel is not to be judged on the basis of isolated instances of error, but on the entire record and the totality of circumstances. *Hawkins,* 660 S.W.2d at 75; *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Cr.App.1986). Under the *Strickland* test, the appellant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Jackson,* 877 S.W.2d at 771; *Calderon,* 950 S.W.2d at 126.

### 1. Objection to "Extraneous Offenses" by Brown Against F.M.

According to Brown, three of the sexual encounters he had with F.M. were extraneous offenses and were subject to exclusion on the basis of Texas Rules of Crimi-

nal Evidence 404(b) and 403.[1] Brown contends that he was denied the effective assistance of counsel because his attorney failed to object to F.M.'s testimony pertaining to the three extraneous offenses. Further, Brown asserts that his counsel was ineffective because counsel failed to request a jury instruction limiting the use of the extraneous offenses to the purpose for which they were admitted. We disagree.

When claiming ineffective assistance for failing to object, an appellant must demonstrate that if trial counsel had objected, the trial judge would have committed error in refusing to sustain the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Cr.App.1996); *Moore v. State*, 4 S.W.3d 269 (Tex.App.—Houston [14th Dist.], no pet.); *Calderon*, 950 S.W.2d at 129. Here, the trial judge could have properly overruled the objection that Brown argues his counsel should have made. The indictment alleged that "Brown knowingly and intentionally cause [sic] the penetration of the female sexual organ of [F.M.], a child, younger than seventeen years of age who was not the spouse of Reginald Derwin Brown, by the penis of the said Reginald Derwin Brown." Thus, each of the encounters F.M. testified about involved the same conduct alleged in the indictment. "An extraneous offense is any act of misconduct, whether resulting in prosecution or not, *which is not shown in the charging instrument* and which was to have been committed by the accused." *Hernandez v. State*, 817 S.W.2d 744, 746 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (emphasis added). As noted in *Worley v. State*, 870 S.W.2d 620, 622 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), the State may put on "evidence of multiple occurrences of the acts alleged in the indictment, even if the evidence shows that such acts were committed on different dates from the dates shown in the indictment." F.M.'s testimony, therefore, did not "describe an offense, but merely quantified its occurrence." [2] *Id.*

Brown further argues that persons who commit multiple discrete assaults against the same victim are liable for separate prosecutions and punishment for every instance of such criminal conduct and therefore the analysis under Rule 404(b) applies. *See Vernon v. State*, 841 S.W.2d 407 (Tex.Cr.App.1992). *Vernon*, however, involved "unalleged similar acts of sexual abuse." *Id.* at 410. The appellant in *Vernon* was convicted of aggravated sexual assault for "putting his finger into the sexual organ of his 13–year–old stepdaughter." *Id.* at 408. The "similar" acts of sexual abuse were multiple instances of the appellant fondling his stepdaughter over a period of several years. *Id.* at 410. Fondling and penetration are distinct acts that may be separately prosecuted under different sections of the Penal Code.[3] The

---

1. Effective March 1, 1998 the Court of Criminal Appeals adopted the Texas Rules of Evidence which apply in both civil and criminal proceedings. However, we apply the rules in effect at the time of the trial in this opinion.

2. The restriction on such evidence is two-fold: (1) the acts shown must not be so remote in time that the limitations period has expired; and (2) the acts shown must not have occurred after the presentment of the indictment. *Id.; Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Cr.App.1997) ("It is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period."). In this case, the indictment was filed on March 24, 1994. Brown does not contend that the sexual encounters F.M. testified to were not within the limitations period nor does he contend that they occurred after the presentment of the indictment.

3. Fondling falls within the category of indecency with a child by contact and is prosecutable under TEX. PEN.CODE ANN. § 21.11 (Vernon 1994). Penetration belongs under the heading of aggravated sexual assault, prosecutable under TEX. PEN.CODE ANN. § 22.021 (Vernon 1994).

*Vernon* indictment charged the accused with digital penetration only, not with the prior instances of external touching. Hence, the external touching offenses were unalleged and extraneous. *Id.* at 411; *Worley,* 870 S.W.2d at 621.

■ As indicated above, however, the three sexual encounters complained of involve the identical conduct alleged in the indictment. The only difference between the conduct charged in the indictment and the other sexual encounters is the date. A variance in the date between the indictment and the evidence will not invalidate an indictment or a conviction. *Id.* An appellant's multiple commissions of the sexual acts charged in the indictment are not extraneous offenses for evidentiary purposes. *Id.* Thus, the evidence here was admissible, and counsel was not ineffective for failing to lodge an objection. *See McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Cr.App.1992) (holding that the failure to object to admissible evidence does not constitute ineffective assistance). Further, because the other sexual encounters were not extraneous offenses, but rather were multiple acts of the conduct charged in the indictment, counsel was not ineffective for failing to request a limiting instruction.

### 2. Election

Brown also contends that he was denied the effective assistance of counsel when his counsel failed to request that the State elect a particular sexual encounter, of the four F.M. testified about, to be submitted to the jury. Brown asserts that without an election, there is no assurance that the jury reached a unanimous verdict in this case and the omission of counsel to request an election is clearly harmful. We disagree.

■ The State is required, upon request, to elect which of the instances of the charged act it will rely upon for purposes of conviction. *See Scoggan v. State,* 799 S.W.2d 679, 680 n. 3 (Tex.Cr.App.1990). However, the right to request an election

must be viewed in light of double jeopardy concerns. As discussed above, the State presented proof at trial of four instances of the charged conduct. Any of these instances of conduct would support a conviction under the indictment. The presentment of proof of an offense at trial will prevent the defendant from being twice placed in jeopardy for the same offense. *See Ex parte Goodbread,* 967 S.W.2d 859, 860–61 (Tex.Cr.App.1998); *Stahle v. State,* 970 S.W.2d 682, 693 (Tex.App.—Dallas 1998, pet. ref'd). If the State elects a particular instance of the charged conduct to support a conviction, however, the other instances of conduct will not be jeopardy barred. *Id.* As noted in *Walker v. State:*

> If evidence of more than one offense is admitted and a conviction for either could be had under the indictment, and neither the State nor the court elects, a plea of former conviction is good upon a prosecution based upon one of said offenses, it being uncertain for which one the conviction was had.

*Walker v. State,* 473 S.W.2d 499, 500 (Tex. Cr.App.1971). Accordingly, without an election, Brown was free to urge a jeopardy bar to any subsequent prosecution for any of the four offenses presented at trial.

■ Allegations of ineffective assistance of counsel will only be sustained if they are firmly founded in the record. *Jackson,* 877 S.W.2d at 771. Brown has not directed us to any place in the record, such as a motion for new trial or other hearing, that would indicate why his counsel did not request an election. *Howland v. State,* 966 S.W.2d 98, 104–05 (Tex.App.—Houston [14th Dist.] 1998), *aff'd,* 990 S.W.2d 274 (Tex.Cr.App.1999). We indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Id.; Jackson,* 877 S.W.2d at 771 ("Consistently with *Strickland,* we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judg-

ment."). If there is any plausible basis for counsel's action, we may not speculate on the reasons for that action when the record contains no evidence of them. *Id.*

We conclude that there was a plausible basis for counsel not to request an election. Counsel could have reasonably believed that not requesting an election was the most prudent and effective course, since this course would bar any subsequent prosecution for any of the instances of the charged conduct. Thus, we hold that counsel was not ineffective for failing to request an election.

For these reasons, issues one and two are overruled.

### B. Extraneous Bad Act by Brown Against F.M.

In issue eight, Brown contends that the trial court erred in admitting evidence of an extraneous bad act by Brown against F.M. In issue nine, Appellant asserts that the trial court erred in admitting evidence concerning Brown's comments regarding this extraneous bad act. We will address these issues together.

During the guilt-innocence phase of the trial, the State elicited the following testimony from Eliza Sands concerning an incident which occurred in the spring of 1992.

Q. At some point in time after you [Ms. Sands] arrived, did [F.M.] come into the room.

A. Yes, she did.

Q. What did [F.M.] do when she came into the room?

A. She greeted Reginald Brown.

Q. What, if anything, did Mr. Brown say to [F.M.] when she came into the room?

A. He said, "Hey, baby, come give Bishop a kiss."

Q. What did [F.M.] do?

A. She came up to him and put her arms around his neck and he picked her up and gave her a kiss and hugged her.

Q. Can you give the jury an idea of how Mr. Brown picked [F.M.] up?

A. Yes. Would you like me to demonstrate?

Q. Please do.

A. Okay. It's like a little kid runs up to their parent, and she came towards him like this ..., wrapped her arms around his neck, and he picked her up. Had one arm on her back, wrapped around her waist, middle back, and the other one supported her bottom.

Q. His hand was on her buttocks; is that correct?

A. To the best— as far as I could see, yes.

. . .

Q. Did you confront him at some point that day about what you had seen in the Potakey house?

A. Yes, I did.

Q. What did you say to him?

A. I asked him did he realize what he had done and how it looked.

Q. His response was what?

A. That I didn't see what I thought I saw, that it wasn't the way that I told him it was. What I say is not what you say. "You know, I can't work with women like this. You know, all the women in the church, y'all are just so possessive. If my wife doesn't have a problem with it, what's your problem with it."

Appellant lodged an objection to this testimony under Rule 403 of the Texas Rules of Criminal Evidence.[4] The trial court overruled this objection and admitted the testimony. Appellant contends that this was error. The State argues that the

---

4. Texas Rule of Criminal Evidence 403 provides in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ..." Tex.R.Crim. Evid. 403.

evidence of this extraneous bad act was admissible pursuant to article 38.37 of the Texas Code of Criminal Procedure. We agree with the State.

Article 38.37 provides that evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, notwithstanding Rules 404 and 405 of the Texas Rules of Criminal Evidence. "Relevant matters" include 1) the state of mind of the defendant and the child, and 2) the previous and subsequent relationship between the defendant and the child. TEX. CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.1999). The enactment paragraph pertaining to Article 38.37, provides that article 38.37 is applicable "to any criminal proceeding that commences on or after the effective date of this Act, regardless of whether the offense that is the subject of the proceeding was committed before, on, or after the effective date of this Act." Acts of June 5, 1995, 74th Leg., ch. 318 § 48(b), 1995 Tex. Gen. Laws 2748–2749. The effective date of article 38.37 was September 1, 1995.

■■■ Brown was indicted in 1994.[5] According to Brown, article 38.37 has no applicability to the instant case because this article does not apply to offenses indicted before September 1, 1995. While there was a split among the courts of appeals as to the applicability of article 38.37 to cases where the indictment was returned prior to the statute's effective date,[6] this disagreement was resolved by the Court of Criminal Appeals in *Howland v. State*, 990 S.W.2d 274 (Tex.Cr.App.

1999). In *Howland*, the court held that article 38.37 is applicable to any one of many isolated proceedings within a prosecution, so long as the proceeding at issue occurred after September 1, 1995. *Id.* at 276–77. Accordingly, because the proceeding at issue (the trial) occurred in 1997, article 38.37 applies to this case.

■■■ The trial court is given wide latitude to admit or exclude evidence of extraneous offenses. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex.Cr.App. 1990) (op. on reh'g). We will not reverse a trial court's ruling if it is within the zone of "reasonable disagreement." *Id.* at 391. In balancing probative value and unfair prejudice under Rule 403, an appellate court presumes that the probative value will outweigh any prejudicial effect. *Montgomery*, 810 S.W.2d at 389; *Blakeney v. State*, 911 S.W.2d 508, 515 (Tex.App.—Austin 1995, no pet.). It is, therefore, the objecting party's burden to show that the probative value is substantially outweighed by the danger of unfair prejudice. *Poole v. State*, 974 S.W.2d 892, 897 (Tex.App.—Austin 1998, no pet.).

■■■ Evidence of additional improper acts by a defendant against a child victim have been made explicitly relevant and admissible, notwithstanding Rules 404 and 405, by article 38.37. *Hinds v. State*, 970 S.W.2d 33, 34 (Tex.App.—Dallas 1998, no pet.). Based on our review of the record, we conclude that Sands' testimony of the encounter between F.M. and Brown was relevant and probative of the matters contained in Article 38.37, *i.e.*,

---

**5.** A jury trial was initially held in 1995 during which the trial court declared a mistrial. The retrial of the case occurred in May of 1997.

**6.** *Compare Haney v. State*, 977 S.W.2d 638 (Tex.App.—El Paso 1998, pet. filed) (holding article 38.37 only applies to criminal prosecutions begun on or after effective date); *Snellen v. State*, 923 S.W.2d 238 (Tex.App.-Texarkana 1996, pet. ref'd) (noting article 38.37 not applicable because indictment filed before effective date) and *Yzaguirre v. State*, 938 S.W.2d 129 (Tex.App.—Amarillo 1996 (not-

ing article 38.37 not applicable since proceeding commenced with return of indictment before effective date of article), *rev'd on other grounds*, 957 S.W.2d 38 (Tex.Cr.App.1997) *with Howland v. State*, 966 S.W.2d 98 (Tex.App.—Houston [1st Dist.] 1998) (construing article 38.37 to be applicable to all possible steps in prosecution), *aff'd*, 990 S.W.2d 274 (Tex.Cr.App.1999) and *Empty v. State*, 972 S.W.2d 194 (Tex.App.—Dallas 1998, pet. filed) (following *Howland*).

the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. Evidence of extraneous acts such as this explains how "a person in a position of authority, custody, or care of a young child has developed an unnatural attitude and relationship toward that child to explain the charged act—an act that would otherwise seem wholly illogical and implausible to the average juror." *Poole*, 974 S.W.2d at 898 (citing Cathleen Herasimchuk, *Article 38.37: Using Extraneous Acts as Evidence in Child Victim Cases, Texas Prosecutor Special Issue* 1995, at 14–16) (quoting *Johns v. State*, 155 Tex.Crim. 503, 236 S.W.2d 820, 823 (1951)). Thus, Sands' testimony was probative in establishing the states of mind of both F.M. and Brown. It tended to show that Brown had the necessary intent and ability to commit the offense alleged and to show that F.M. was compelled to acquiesce. Sands' testimony was also a significant indicator of the nature of the relationship between the two. In prosecutions for sex offenses against children, "extraneous acts between the complainant and the defendant are usually more probative than prejudicial." *Boutwell v. State*, 719 S.W.2d 164, 178 (Tex.Cr.App.1985). Because the evidence was probative in showing Brown's and F.M.'s state of mind and helped to establish the nature of their relationship, the trial court's decision to admit the evidence was within the "zone of reasonable disagreement." *Poole*, 974 S.W.2d at 898 (holding that any prejudice resulting from child's testimony concerning extraneous offenses against the child was outweighed by probative value in showing defendant's state of mind and the nature of their relationship); *Ernst v. State*, 971 S.W.2d 698, 700–01 (Tex.App.—Austin 1998, no pet.) (same). Based on the foregoing, we hold that the trial court did not abuse its discretion and we overrule issue numbers eight and nine.

## C. Testimony Concerning F.M.'s Truthfulness

In issue ten, Brown asserts that the trial court erred in overruling his objection to Linda Royal's ("Royal") testimony that she believed F.M. is telling the truth about the allegations against Brown. Specifically, Brown complains about the following testimony:

. . .

Q. (By the State) Ms. Royal, you testified that you didn't believe the allegations [F.M.] made back then. Do you believe them now?

A. Yes.

Appellant's counsel: Judge, I'm going to object. That calls for some speculation on her part or asking her to assume the role of the jury, Your Honor.

State's counsel: May I respond, Your Honor?

The Court: I'll overrule the objection. You may restate your question and-

Q. (By the State)Ms. Royal, you testified a few moments ago that you do not believe—at the time in 1993, you did not believe [F.M.]'s allegations. My question to you now, ma'am, is do you believe those allegations now?

A. Yes.

. . .

Brown contends that this testimony was inadmissible under TEX.R.CRIM. EVID. 701 because Royal was not competent to express an opinion regarding F.M.'s truthfulness or whether she was sexually abused by Brown. *See Black v. State*, 634 S.W.2d 356, 357–58 (Tex.App.—Dallas, 1982, no pet.). We disagree.

Royal, the mother of one of F.M.'s friends, was a defense witness. On cross, the State elicited testimony, without objection, from Royal indicating that although she did not believe F.M.'s story when the allegations first came to light, her opinion had changed. On redirect, Brown asked if Royal believed F.M. now but did not be-

lieve her when the allegations were first made to which Royal responded, "That's right." On recross, the State elicited the complained of testimony.

Even when inadmissible evidence is erroneously admitted, the error is cured when the same evidence is admitted without objection elsewhere at trial. *See Cox v. State*, 931 S.W.2d 349, 355 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex.Cr. App.1997). This principle requires a complaining party to object each time allegedly inadmissible evidence is offered, else the objection is waived. *Id.* Further, a party may not successfully challenge evidence that he introduced at trial nor may a party invite error, then complain about it on appeal. *Id.* Prior to the complained of testimony, the State elicited testimony from Royal, without objection, indicating that she had changed her mind concerning the truthfulness of F.M.'s allegations. Moreover, Brown elicited testimony from Royal indicating that she had changed her mind and now believed F.M. was telling the truth about the sexual encounters. Because Brown failed to object as soon as the ground of objection became apparent and he later elicited the same testimony he complains of, we overrule issue ten.

### D. Factual Sufficiency

In issue eleven, Brown contends that the evidence is factually insufficient to establish that he committed the offense of sexual assault. Brown asserts that we must reverse his conviction because (1) F.M. admitted the allegations were untrue; (2) numerous inconsistencies exist in F.M.'s testimony; and (3) there is no physical evidence, no corroboration of F.M.'s testimony and there are no other witnesses. After reviewing the record, we cannot agree with Brown's assertions.

In conducting a factual sufficiency review, we examine the jury's weighing of the evidence. *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Cr.App.1996). In doing so, we view all the evidence without the prism of "in the light most favorable to the prosecution." *Id.* at 134. Nevertheless, we must appropriately defer to the jury so as to avoid substituting our judgment for that of the jury. *Id.* at 133, 135. The purpose of our review is to prevent a manifestly unjust result, and we are not free to set aside a jury's determination merely because we believe a different result is more reasonable. *Id.* at 135. We will reverse a case for factual insufficiency only if the jury's determination "is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust." *Id.*

Having reviewed the record, we cannot agree with Brown's contention that F.M. admitted the allegations were untrue. Brown bases this contention on (1) a diary entry wherein F.M. wrote that she "fantasized about having sex with an older man," and (2) Royal's testimony that F.M. told her that certain diary entries were fantasies. There were diary entries wherein someone told F.M. to take her clothes off while she was in the pastor's study and another that related a sexual encounter between F.M. and Brown at Brown's house. According to Brown, these entries demonstrate that F.M. made up her testimony concerning the sexual encounters with Brown.

Our reading of the testimony regarding the entry pertaining to fantasizing indicates that it could be inferred that the entry pertained to "fantasizing" about sex with a generic older man, rather than Brown himself. From the record before us, it does not appear that the entry says that she fantasized about having sex with Brown. Of course, even if the entry could be interpreted to refer to fantasizing about having sex with Brown, the fact that F.M. fantasized about this does not necessarily mean that her testimony regarding actual sexual encounters with Brown was false. Moreover, the entry relating a sexual encounter F.M. had with Brown is detailed and seems to comport with F.M.'s testimo-

ny concerning the first sexual encounter with Brown in May of 1993. F.M. herself testified that the entries detailed actual sexual encounters between her and Brown. Finally, on cross-examination, she denied telling Royal that the entries involving Brown were a fantasy.

Further, the State elicited testimony from Royal which indicates that F.M. did not tell her that the entries concerning sexual encounters between herself and Brown were fantasy. Rather, Royal testified that when she confronted F.M. about the entries and asked why she wrote them, F.M. simply said, "I don't know." Moreover, Royal testified that F.M. would not make eye contact with her during this conversation. It could be inferred that the failure to make eye contact indicates that F.M. was attempting to hide something more troubling. In sum, we hold that the diary entries and Royal's testimony do not necessarily lead to the conclusion that F.M. admitted that the allegations against Brown were untrue. At most, the meaning of this evidence involved the determination of the credibility of F.M. and Royal as witnesses and resolution of any conflicts that were presented. Determination of credibility and the resolution of conflicts in the evidence are areas within the exclusive province of the jury. *See Empty,* 972 S.W.2d at 196–97; *Easley v. State,* 978 S.W.2d 244, 248 (Tex.App.—Texarkana 1998, pet. ref'd.).

We also disagree with Brown's contention that the State presented no corroborative testimony. After reviewing the record, we conclude that the State did present witnesses which corroborate F.M.'s testimony albeit circumstantially. F.M. testified that she was 16 years old in the summer of 1993 and that she had never been married to Brown. She testified that she and Brown had sex four times during the summer of 1993. Her testimony shows that one of the encounters occurred at Brown's house while she was there for a slumber party and the other three occurred at her house. R.M., F.M.'s

brother, testified that he saw Brown at their house two or three times during the summer of 1993 and that Brown would sometimes go directly to F.M.'s room. Quargnilde Smith Crawford ("Crawford"), F.M.'s cousin, testified that in the summer of 1993 she was living with the Moores. She testified concerning an occasion when she was looking for her shoes before she left for church and she went to look in F.M.'s room but the door was locked. She testified that it was unusual for her door to be locked. She knocked on the door and F.M. said, "Just a minute." Crawford did not wait for F.M. to open the door but did try to open the bathroom door before she left for church and found it locked also. As she was leaving for church, she saw Brown's car in the driveway. When she returned from church fifteen to twenty minutes later, she saw Brown in the front yard.

F.M.'s mother testified that F.M.'s behavior and attitude changed during the summer of 1993. She testified that F.M. became angry and upset and when she asked F.M. what was wrong, F.M. would say, "Nothing." She also testified that F.M. began taking an unusually high number of baths during this time. F.M.'s sister, C.M., testified that she was at a slumber party at Brown's house during the summer of 1993. She testified that Brown came into the room where the girls were and asked to see F.M. in another room. F.M. left the room with Brown. Further, she testified that she recalled Brown coming over to their house and going into F.M.'s room.

Based on the foregoing and after reviewing all of the evidence presented at trial, we conclude that the jury's findings were not so against the great weight of the evidence to be clearly wrong and manifestly unjust. Although Brown highlights a number of inconsistencies in F.M.'s testimony and would have us conclude therefrom that the evidence is factually insufficient, we decline to do so. The jury was the factfinder in this case and, as such, it

was the jury's responsibility to resolve any conflicts in the testimony. *Id.* In addition, as factfinder, the jury was entitled to conclude that the inconsistencies, if any, in F.M.'s story were immaterial and inconsequential. *Id.* Because we may not substitute our judgment for that of the jury, we conclude the evidence is factually sufficient to support Brown's conviction. We overrule issue eleven.

## III. PUNISHMENT PHASE

### A. Objection to Extraneous Offenses With Other Women

In issue seven, Brown contends that the trial court erred in admitting evidence of unadjudicated extraneous offenses with other women at the punishment phase of the trial. At the punishment phase, evidence of unadjudicated extraneous offenses was admitted which consisted of:

1) C.M.'s testimony that Brown had sexual intercourse with her on two occasions and that he fondled her breast when she was 16 years old.
2) P.L.'s testimony that Brown fondled her breast when she was 15 years old.
3) Eliza Sands' testimony that Brown pinched and fondled the nipples of S.T. when she was elementary school aged.
4) Shauntrell Jones' testimony that Brown forcibly had sexual intercourse with her.

Brown asserts that this evidence was devastating and resulted in his receiving the eight-year prison sentence rather than probation. The State argues that Brown did not preserve this complaint for appellate review.

■ To preserve a complaint for appellate review, a party must make a timely specific objection in the trial court. TEX. R.APP. P. 33.1(a); *Mercado v. State,* 718 S.W.2d 291, 296 (Tex.Cr.App.1986). Failure to make a timely objection waives any error on appeal. *See Green v. State,* 682 S.W.2d 271, 275 (Tex.Cr.App.1984), *cert.*

*denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985); *Martin v. State,* 630 S.W.2d 952, 956 (Tex.Cr.App.1982) (op. on reh'g). In addition, to preserve error, the complaint on appeal must comport with the objection made at trial. *See Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Cr.App. 1986); *McCray v. State,* 861 S.W.2d 405, 410 (Tex.App.—Dallas 1993, no pet.).

■ Here, Brown asserts that even though counsel did not object to these extraneous offenses, since it was clear that they were inadmissible under Art. 37.07, the trial court should have excluded them sua sponte. Prior to the presentment of any witnesses at the punishment phase, Brown objected to the prospective testimony of C.M. and Shauntrell Jones on the basis that such testimony was not relevant and that these alleged offenses had been no-billed by the grand jury. He made no objection to the testimony of P.L. or Eliza Sands. Because Brown either did not object or the objections he did make do not comport with the complaint on appeal, we conclude that nothing is presented for our review. *See Thomas,* 723 S.W.2d at 700; *McCray,* 861 S.W.2d at 410. We overrule issue number seven.

### B. Ineffective Assistance of Counsel at the Punishment Phase

In issue three, Brown argues that he received ineffective assistance of counsel at the punishment phase of trial under the test of *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980). In issue four, Brown asserts that he received ineffective assistance of counsel at the punishment phase under the *Strickland* standard. Although the opinion has not been released for publication, the Court of Criminal Appeals has recently overruled *Duffy* and held that *Strickland* is the proper test for ineffective assistance of counsel at the punishment phase. *See Hernandez v. State,* 988 S.W.2d 770, 771–72 (Tex.Cr.App.1999). Accordingly, issue three is overruled, and

we will address issue four under the *Strickland* standard.

Brown contends that the evidence referred to in the previous section was inadmissible under the version of TEX.CODE CRIM. PROC. ANN. 37.07(3)(a) applicable to this case.[7] He argues that his counsel's objection (that the evidence was not relevant and the grand jury had no-billed two of the offenses) was insufficient and that the failure to properly object constituted ineffective assistance.

■ Prior to September 1, 1993, article 37.07(3)(a) authorized admission of a defendant's "prior criminal record" during the punishment phase of a non-capital trial. *See Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Cr.App.1992). Article 37.07(3)(a) defined "prior criminal record" as a "final conviction in a court of record, of a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." *Id.* The Court of Criminal Appeals interpreted this language to mean only final convictions were admissible for any purpose under art. 37.07(3)(a). *Id.* at 524–25. Although article 37.07(3)(a) was amended in 1993 to broaden the type of evidence admissible during the punishment phase of a noncapital trial, the amendment only applies to offenses committed on or after September 1, 1993. *See Thomas*, 923 S.W.2d at 612; *Voisine v. State*, 889 S.W.2d 371, 372 (Tex.App.—Houston [14th Dist.] 1994, no pet.).

■ Here, the indictment alleged that the sexual assault occurred on or about August 26, 1993. F.M.'s testimony at trial indicated that all of the instances of conduct charged in the indictment occurred prior to September 1, 1993. Accordingly, we conclude that the "old" version of Article 37.07(3)(a) applies. Under that version, only final convictions were admissible at punishment. *See Grunsfeld*, 843 S.W.2d at 525–25. There is no evidence in the record before us that any of the extraneous conduct complained of resulted in a final conviction for purposes of article 37.07. Because there was no showing that the extraneous conduct resulted in a final conviction, we conclude that the testimony relating to these offenses was inadmissible under article 37.07. *See Thomas*, 923 S.W.2d at 612–13. Accordingly, we also conclude that Brown's counsel was deficient for failing to object to this evidence on the basis of article 37.07. *Id.*; *Glivens v. State*, 918 S.W.2d 30, 32 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). However, we must determine whether but for

7. Act of June 15, 1989, 71st Leg, R.S., ch. 785, § 4.04, 1989 Tex. Gen. Laws 3471, 3492, *amended by*, Act of June 19, 1993, 73 Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3762. Even though this case was tried after the September 1, 1993, effective date of *the 1993 amendment to article 37.07(3)(a)*, the version of TEX.CODE CRIM. PROC. ANN. applicable here is the version at the time of the offense, by virtue of express language in the amendatory act itself. Section 5.09 provides:

(a) The change in law made by this article applies only to an offense committed on or after the effective date of this article. For purposes of this section, an offense is committed before the effective date of this article if *any element of the offense occurs before the* effective date.

(b) An offense committed before the effective date of this article is covered by the law in effect when the offense was committed and the former law is continued in effect for that purpose.

Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 5.09, 1993 Tex. Gen. Laws 3586, 3763–64, *amended by*, Act of May 31, 1995, 74th Leg., R.S., ch. 262, 1995 Tex. Gen. Laws 2517, 2583 (current version at TEX.CODE CRIM. PROC. ANN. art 37.07(3)(a) (Vernon Supp. 1999)).

Thus, the applicable version of article 37.07(3)(a) provides:

Regardless of the plea and whether the punishment is assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense alleged.

counsel's deficient conduct, the result of the punishment phase would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ During the punishment phase, the trial judge stated that he would only consider extraneous offenses if there was proof beyond a reasonable doubt to support them. The trial judge did not consider C.M.'s testimony in reaching his decision on punishment because he did not believe that those allegations were proven beyond a reasonable doubt. Further, there is nothing in the record to indicate that the trial judge considered any of the other extraneous offenses. Moreover, the sentence imposed was not severe in light of the range of possible punishment and the State's request for a sentence of twenty years. *See* TEX. PEN.CODE ANN. § 12.33 (Vernon 1994) ( range is two to twenty years and up to $10,000.00 fine). For these reasons, we conclude that Brown has failed to establish that he was prejudiced by his counsel's deficient conduct. *Id.* Accordingly, we overrule issue three.

### IV. REMAINING ISSUES

In issue five, Brown contends that based upon the totality of representation, he "received ineffective assistance of counsel under United States Constitution, Amend. VI. and XIV." In issue six, he asserts that "based upon the totality of representation, he received ineffective assistance of counsel under Texas Constitution, Art. I, Sect. 10, and Art. 1.05, Texas Code of Criminal Procedure." Since we have already addressed the ineffectiveness of counsel based upon the totality of representation under the United States and Texas Constitutions in our discussion of issues one through four, issues five and six are overruled.

Based on the foregoing, we *affirm* the trial court's judgment.