MEMORANDUM OPINION

No. 04-04-00718-CR

David GROSS,
Appellant

v.

The STATE of Texas,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 03-04-8917-CR
Honorable Mickey R. Pennington, Judge Presiding
 
Opinion by:    Karen Angelini, Justice
 
Sitting:            Alma L. López, Chief Justice
Karen Angelini, Justice
Phylis J. Speedlin, Justice
 
Delivered and Filed:   July 6, 2005

AFFIRMED
            Appellant David Gross was found guilty of sexually assaulting his minor son, N.A.G., and
was sentenced to eight years confinement. Gross brings two issues on appeal: 1) the evidence is not
factually sufficient to support his conviction, and 2) he was denied effective assistance of counsel.
We overrule both issues and affirm the trial court’s judgment. 
Background
            At trial, N.A.G., Gross’s minor son, testified that on or about December 31, 2002, Gross
returned home in an intoxicated state from his girlfriend’s house to find N.A.G. asleep in Gross’s
bed. Gross roused N.A.G. from sleep and instructed him to remove his boxer shorts. N.A.G. did so
because he was afraid that Gross would physically harm him if he refused. Gross then attempted
physical contact between Gross’s mouth and N.A.G.’s penis. According to N.A.G., brief contact did
occur. Gross said to N.A.G., “Just think it’s a girl.” N.A.G. began to cry and Gross stopped. He
instructed N.A.G. not to tell anyone.
            The State asked N.A.G. whether this was an isolated incident. N.A.G. described a second
incident which occurred when N.A.G. and Gross lived together in a converted motel. Gross returned
home one evening from a nearby bar. He told N.A.G., “There is [sic] new rules in the house. I like
to walk around with my clothes off.” Gross then instructed N.A.G. to come into the bathroom and
remove his clothing. He told N.A.G. to rub his penis on Gross’s buttocks, but N.A.G. refused. Gross
then asked to rub his penis on N.A.G.’s buttocks, and again, N.A.G. refused. N.A.G. began to cry
and Gross again told him not to tell anyone.
            N.A.G. further testified that in early February, 2003, he made the outcry that Gross had
sexually abused him. He confided in the school counselor, Tammi Kopecki, regarding Gross’s
conduct. Kopecki then contacted Child Protective Services, and the case was transferred to Lucy
Gallegos. Gallegos visited N.A.G. at school and spoke with him to determine what happened. After
hearing N.A.G.’s outcry statement, Gallegos removed N.A.G. from his home and placed him in
foster care. N.A.G. ran away several times, but was returned to foster care. At the time of trial,
N.A.G. lived with his former step-mother, Maria Sauer. 
            In direct contrast to N.A.G.’s testimony, Gross stated that he never sexually abused his son.
Additionally, Gross denied ever physically abusing his son in any way. In describing his son’s
character, Gross characterized N.A.G. as a person who frequently lied. According to Gross, when
N.A.G. finds himself in trouble, he lies to avoid punishment. Gross further testified that he believed
N.A.G.’s primary motivation for making the outcry was his desire to live with his mother.            Gross explained that if he had any failings as a parent, it is his leniency toward his children.
He described N.A.G.’s behavior as being often out of control and irrational. He attributed nearly all
of N.A.G.’s problems to Attention Deficient Syndrome (A.D.S.). For his disorder, N.A.G. is on
medication, which Gross claimed N.A.G. took sporadically. According to Gross, as a result of
N.A.G.’s mental health issues, N.A.G. had frequent disciplinary problems and was eventually
removed from regular schooling and placed in an alternative education environment.
Factual SufficiencyGross argues that the evidence is not factually sufficient to sustain the jury’s finding of guilt.
In conducting a factual-sufficiency review, rather than viewing the evidence in the light most
favorable to the prosecution, our review of the evidence is a neutral one. Zuniga v. State, 144 S.W.3d
477, 481 (Tex. Crim. App. 2004). There is only one question to be answered in a factual-sufficiency
review: considering all of the evidence in a neutral light, was a jury rationally justified in finding
guilt beyond a reasonable doubt? Id. at 484. There are two ways in which the evidence may be
factually insufficient. Id. First, when considered by itself, evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt. Id. Second, there may be both
evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the evidence
under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. Id. at 485.
            Here, N.A.G. testified that his father put his mouth on N.A.G.’s penis. Gross argues that
N.A.G.’s testimony was procured only after prompting from the State. However, during direct
examination, N.A.G. testified clearly and unequivocally that Gross did, in fact, commit the offense
charged. 
            At trial, Gross attempted to discredit his son’s testimony, testifying that N.A.G. was a child
who suffered from Attention Deficient Syndrome, that N.A.G. lied frequently to get himself out of
trouble, that N.A.G. was angry at his father for taking away his bike, and that was the motivation for
making the outcry statement. Additionally, Gross attempted to show date discrepancies to prove that
when the incident occurred, Gross and his son lived at a different address than the one alleged.
            Gross’s credibility, however, was also placed in issue. When Gross took the stand, he
explained that he had been convicted several times of driving while intoxicated, possessing
marijuana, and assaulting his former wife, Maria Sauer. Maria Sauer testified that while married to
Gross, he was verbally and physically abusive to both her and the children living in the house at the
time, including N.A.G. N.A.G. also testified that Gross was physically abusive, specifically stating
that Gross often hit him. Both Maria Sauer and N.A.G. testified that Gross abused drugs. Gross,
however, denied any physical abuse or using drugs in front of his children.
            The majority of the evidence in this case depends on the credibility of witnesses. Unless the
available record clearly reveals a different result is appropriate, we must defer to the jury’s
determination concerning what weight to give contradictory testimonial evidence because resolution
often turns on an evaluation of credibility and demeanor of the witnesses’ testimony. Johnson v.
State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). In this case, both the State and Gross presented
evidence, a substantial portion of which was conflicting. The only evidence that could have
exonerated Gross turned on the jury’s acceptance of Gross’s version of events. The jury chose to
resolve the conflicting evidence in the State’s favor. We must defer to the jury’s determination. Id.
at 12. Therefore, we hold that the evidence is factually sufficient to support Gross’s conviction.
            We overrule Gross’s first issue.
Ineffective Assistance of CounselIn his second and third issues, Gross argues that he was denied effective assistance of counsel
in violation of the Sixth and Fourteenth Amendments to the United States Constitution, Article I,
§ 10, of the Texas Constitution, and Article 1.052 of the Texas Code of Criminal Procedure. Because
the test for ineffective assistance of counsel is the same under the state and federal constitutions, both
inquiries are subsumed into one. Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986).
We measure a claim of ineffective assistance of counsel against the two-prong test established by
the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). See Hernandez, 726
S.W.2d at 55-57 (adopting Strickland). First, Gross must show that his counsel’s performance was
deficient, i.e., that his assistance fell below an objective standard of reasonableness. Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second, assuming Gross has demonstrated
deficient assistance, it is necessary to affirmatively prove prejudice. Id. In other words, Gross must
show a reasonable probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different. A reasonable probability is one that is sufficient to undermine
confidence in the outcome. Id.  
            If Gross fails to make the required showing of either deficient performance or sufficient
prejudice, his ineffectiveness claim is defeated. Id. at 813. Without both showings, we cannot
conclude the conviction resulted from a breakdown in the adversarial process that renders the result
unreliable. We look to the totality of the representation and the particular circumstances of each case
in evaluating the effectiveness of counsel. Id. When determining the validity of a defendant’s claim
of ineffective assistance of counsel, judicial review must be highly deferential to trial counsel in
order to avoid the “deleterious effects of hindsight.”Id. There is a strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance. Id.            
            Additionally, to determine whether the defendant received the ineffective assistance of
counsel, an assessment must be made according to the facts of each case. Id. Any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness. Id. Normally, the record on direct appeal will not be sufficient to show
that counsel’s representation was so deficient and so lacking in tactical or strategic decisionmaking
as to overcome the presumption that counsel’s conduct was reasonable and professional. Bone v.
State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The trial record will rarely contain enough
information to allow an appellate court to fairly evaluate the merits of such a serious allegation. Id.
In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately
reflect the failings of trial counsel. Id. 
            Gross argues that his counsel was ineffective for the following reasons: (1) counsel failed to
object to testimony of extraneous conduct and solicited extraneous conduct testimony from Lucy
Gallegos, an investigator for Child Protective Services, (2) counsel failed to object to extraneous
conduct and solicited extraneous conduct testimony from Maria Sauer, (3) counsel failed to object
to testimony by Tammi Kopecki that bolstered the truthfulness of N.A.G.’s outcry statements, (4)
counsel failed to object to testimony by N.A.G. of Gross’s extraneous conduct and failed to object
to the State’s statement meant to bolster N.A.G.’s credibility, (5) counsel placed extremely harmful
testimony before the jury when he introduced a report from Mark Steege relating to Gross’s results
of the Abel Assessment Test, and (6) counsel failed to request limiting instructions.
            Although Gross filed a motion for new trial, he did not attach affidavits to his motion, and
there was not an evidentiary hearing on the motion. As such, Gross’s complaints directed at his trial
counsel involve actions that may or may not be grounded in sound trial strategy. The record does not
reflect his attorney’s reasons for doing or failing to do the things of which appellant complains. In
such situations, the issues are better presented within the framework of a post-conviction writ of
habeas corpus under article 11.07 of the code of criminal procedure. Tex. Code Crim. Proc. Ann.
art. 11.07 (Vernon 2005); Ex parte Torres, 943 S.W.2d 469, 475-76 (Tex. Crim. App. 1997); see
also Thompson, 9 S.W.3d at 813 (“A substantial risk of failure accompanies an appellant’s claim of
ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the
opportunity to make its determination on direct appeal with a record capable of providing a fair
evaluation of the merits of the claim . . . .”).
            Gross also argues that his counsel failed to request that the State elect which of the two
offenses on which it would proceed, thus creating the possibility that the jury’s verdict was not
unanimous. For support, he cites Francis v. State, 36 S.W.3d 121 (Tex. Crim. App. 2000). In
Francis, the State introduced evidence of four separate incidents. Id. at 124. On two separate
occasions, the appellant allegedly touched the victim’s breasts. Id. In two other incidents, the
appellant allegedly touched the victim’s genitals. Id. There was never a single incident alleged in
which the appellant touched both the breasts and the genitals of the victim. Id. 
            “When appellant requested that the State be asked to elect, the State proceeded on the
incident in which the appellant touched the victim’s breast and the second incident in which the
appellant touched the victim’s genitals.” Id. The court of criminal appeals noted that these two
incidents constituted two separate offenses. Id. The relevant portion of the jury charge read:
[I]f you find from the evidence beyond a reasonable doubt that on or about the 1st
day of November, 1992, in Tarrant County, Texas, the Defendant, JOSEPH
CLAYTON FRANCIS, did . . . engage in sexual contact by touching the breast or
genitals of . . .

Id. (alterations in original).
            The appellant appealed, arguing that the jury charge erroneously allowed a conviction on less
than a unanimous verdict. Id. at 123. The court of criminal appeals agreed and held that the jury
charge given created the possibility of a non-unanimous jury verdict:
The breast-touching and the genital-touching were two different offenses, and
therefore, should not have been charged in the disjunctive. By doing so, it is possible
that six members of the jury convicted appellant on the breast-touching offense
(while the other six believed he was innocent of the breast-touching) and six
members convicted appellant on the genital-touching offense (while the other six
believed he was innocent of the genital-touching). Appellant was entitled to [a]
unanimous jury verdict. Hence, the trial court erred by charging appellant in the
disjunctive.

Id. at 125(citations omitted). 
            Here, Gross was indicted for “intentionally or knowingly caus[ing] the sexual organ of
N.A.G., a child who was then and there younger than 17 years of age and not the spouse of the
defendant, to contact the mouth of the defendant.” At trial, N.A.G. testified that during the Christmas
holidays, Gross placed his mouth on N.A.G.’s penis. When asked if this was an isolated incident,
N.A.G. testified that it was not an isolated incident. He then testified about an incident at a hotel
room:
[Gross] bent over and he told me to rub [my penis] on his ass, on his butt. I told him,
“No.” And he said, “Well, let me rub – let me rub mine on yours.” I said, “No,” and
I started crying. He said, “Shut-up or I’ll give you something to cry about.” I mean
he was over there and he said, “Let me see yours,” and I was – I put on my boxers.
He said, “Don’t tell nobody.” Again, he told me not to tell nobody [sic], and it was
all finished.

             Like Francis, these are separate offenses. One involved Gross’s mouth touching N.A.G.’s
penis. The other involved Gross’s penis touching N.A.G.’s buttocks. However, unlike Francis, there
is no possibility of a non-unanimous jury verdict. Gross was indicted for the first offense, that of
touching his mouth to N.A.G.’s penis. The jury charge clearly instructed the jury to find Gross guilty
only if it found beyond a reasonable doubt that he had touched his mouth to N.A.G.’s penis:
Now, if you find from the evidence beyond a reasonable doubt that on or about the
31st day of December, 2002, in Medina County, Texas, that the Defendant, David
Gross, did intentionally or knowingly cause the sexual organ of N.A.G. to contact the
mouth of the Defendant, David Gross, and that N.A.G. was then and there a child
younger than seventeen (17) years of age and not the spouse of the Defendant, David
Gross, then you will find the Defendant guilty of sexual assault, as charged in the
indictment.
(emphasis added). The jury charge did not instruct the jury to find Gross guilty based on the second
offense of his penis touching N.A.G.’s buttocks. Therefore, unlike Francis, there is no possibility
of a non-unanimous verdict.
            Moreover, any error by counsel in not requesting the State to elect with which of the two
offenses the State would proceed is not firmly founded in the record. See Thompson, 9 S.W.3d at
813. Upon request, the State is required to elect which of the instances of the charged act it will rely
upon for purposes of conviction. Scoggan v. State, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990);
Brown v. State, 6 S.W.3d 571, 576 (Tex. App.—Tyler 1999, pet. ref’d). However, the right to request
an election must be viewed in light of double jeopardy concerns. Brown, 6 S.W.3d at 576. If the
State elects a particular instance of the charged conduct to support a conviction, the other instances
of conduct will not be barred by double jeopardy. Ex parte Goodbread, 967 S.W.2d 859, 860-61
(Tex. Crim. App. 1998); Brown, 6 S.W.3d at 576. If, however, the State does not make an election,
double jeopardy will bar the other instances of conduct. Goodbread, 967 S.W.2d at 860-61; Brown,
6 S.W.3d at 576. Accordingly, there was a plausible basis for Gross’s counsel not to make such a
request. Counsel could have reasonably believed that not requesting an election was the most prudent
and effective course. See Brown, 6 S.W.3d at 577; see also Mayo v. State, 17 S.W.3d 291, 297-98(Tex. App.—Fort Worth 2000, pet. ref’d) (holding that counsel’s decision not to request an
election by the State could be trial strategy).
            Finally, Gross argues that his counsel failed to object to testimony of this second extraneous
offense pursuant to Texas Rules of Evidence 403. Once again, counsel’s decision not to object may
have been trial strategy, and any error is not firmly founded in the record. See Thompson, 9 S.W.3d
at 813.
            We overrule Gross’s second and third issues. 
Conclusion
            Having overruled all issues, we affirm the judgment of the trial court.
 
Karen Angelini, Justice

Do not publish