Bruce Montague JAMES, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–01–491–CR.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Aug. 29, 2002.

James R. Makin, Beaumont, for appellant.

Philip Babin, Rodney D. Conerly, Asst. Criminal District Attorneys, Tom Maness, Criminal District Attorney, Beaumont, for state.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

Appellant, Bruce Montague James, brings this appeal following a conviction for the offense of assault. By three points of error, James contends: (1) the facilities used for his trial proceedings did not conform with the Americans with Disabilities Act (ADA); (2) the trial court committed error in sentencing James when no proof was adduced proving the trial court had jurisdiction; and (3) the trial court erred in failing to grant a mistrial because the prosecutor injected insinuations of an alleged extraneous offense. We affirm.

### I. BACKGROUND

James, who has cerebral palsy, was being pulled in a wheelchair by his servant dog in the neighborhood where he lived. The victim, John Doiron, was using a small front loader called a Bobcat, to spread dirt

in his front yard. The noise of the Bobcat scared the servant dog, causing it to pull James's wheelchair off course and into a ditch. James's dog ran home. Later, after James collected himself and retrieved his dog, they again passed Doiron's house. The Bobcat scared the dog a second time, and James again fell from his wheelchair and to the ground.[1] While on the ground, James sprayed a canister of pepper spray toward Doiron, causing his eyes and skin to burn.[2] James was charged by information with the offense of assault, and, pursuant to a jury trial, was found guilty. Electing to have the court set punishment, James was sentenced to ninety days in jail, probated for one year, and fined $200.00.

## II. COMPLIANCE WITH ADA

By his first point of error, James contends the trial court erred in trying him in facilities which do not conform with the ADA. *See* 42 U.S.C.A. §§ 12101–12213 (1995). The State asserts James was not denied access to the courtroom.

▆▆▆▆ Title II of the ADA, applicable to public entities, provides that no "qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See id.* § 12132. To establish a violation of Title II, James must demonstrate: (1) he is a qualified individual within the meaning of the Act; (2) he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against; and (3) such exclu-

sion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir.1997), *cert. denied*, *Lightbourn v. Garza*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 643 (1998).

Prior to the beginning of trial, James requested a relocation of the trial to a courtroom which he claimed would be more in compliance with the provisions of the ADA. He complained of noncompliance with regard to the main courtroom entrance, the spectator seating area, the party seating area, the witness stand, the jury box area, the jury deliberation room, the jury toilet room, and the height of the table where he would be seated. *See* 28 C.F.R. pt. 36, app. A Standards for Accessible Design (2001).

At the pre-trial motion hearing, while the trial court acknowledged the courtroom was not in compliance with the ADA, it continued by explaining that "efforts were made to provide Mr. James with a courtroom that would afford him an opportunity, without discriminating against him, a place where he could have his day in court." The court observed that: (1) special areas in the spectator seating area and party seating area were made ready so that James and any citizen with a disability similar to his would be able to observe or participate in the courtroom proceedings without adding to their discomfort; (2) James was able to enter and exit the courtroom without leaving his wheelchair, and without any undue hardship; (3) the witness stand was altered and a ramp created, so James could move to that area and give his testimony; and (4) although the jury box, jury deliberation room, and

---

1. There was disagreement by both parties regarding the second fall by James. James testified it was an accident, while Doiron testified James threw himself out of the wheelchair intentionally.

2. James testified he sprayed the pepper spray in self defense, stating Doiron was going to run over him with the Bobcat. Doiron testified he was not backing up the Bobcat to run over James, and James was never in danger.

jury toilet were not ADA ready, they would not be used in this case because there were no persons with disabilities on the jury panel. The court concluded it had "made every effort to assure the comfort and the convenience of Mr. James as well as to assure his right to a fair trial, which also includes the right to be comfortable in his trial."

■ Without providing this Court with supporting authority, James urges non-compliance with the ADA destroys venue. *See* TEX.R.APP. P. 38.1(h) (brief must contain support for its argument in the form of appropriate citations to authorities and to the record). The regulations of Title II of the ADA, however, do not require a public entity to make existing facilities wheelchair accessible in every respect, as long as the services, programs and activities offered are otherwise accessible to the plaintiff. *See Tyler v. City of Manhattan,* 857 F.Supp. 800, 816 (D.Kan.1994), *aff'd,* 118 F.3d 1400 (10th Cir.1997). In this case, James was able to participate fully in all proceedings. He sat with his attorney and provided his testimony from the witness stand. Other than his contentions, James provided no evidence that he was required to attend the proceedings in an inaccessible location in the courthouse. James did not establish that he was excluded from participation in the trial of his case. We conclude there was no error, and overrule his first point of error.

## III. JURISDICTION

By his second point of error, James contends the trial court committed fundamental error in sentencing him when there was no proof of jurisdiction. James argues that proof of the state in which the offense occurred is indispensable to the invocation of a court's jurisdiction, and because the State did not prove the state in which the offense occurred, the court lacked jurisdiction to sentence him.

■ James testified that his residence was in Beaumont, and that it was located about four houses from Doiron's home, where the incident occurred. James also entered his medical records into evidence which established his residence as "9520 Broun, Beaumont, Texas 77707." In addition, several witnesses employed by the City of Beaumont, testified the assault occurred in Jefferson County. Furthermore, James concedes the State proved the assault occurred in "a Jefferson County."

■ Jurisdiction, like any other requisite of an offense, can be proven circumstantially. *Vaughn v. State,* 607 S.W.2d 914, 920 (Tex.Crim.App.1980). Accordingly, we conclude the circumstantial evidence established jurisdiction in Texas. The trial court did not err in sentencing James. We overrule point of error two.

## IV. EXTRANEOUS OFFENSE

By his third point of error, James contends the trial court erred in failing to grant a mistrial because the prosecutor injected insinuations that James was armed with a handgun. The State asserts evidence regarding a weapon is not an extraneous offense and alternatively, if this Court determines it is an extraneous offense, it is not harmful.

■ An extraneous offense is defined as any act of misconduct, whether prosecuted or not, that is not shown in the charging papers. *Nunez v. State,* 27 S.W.3d 210, 213 (Tex.App.-El Paso 2000, no pet.). Evidence of an extraneous offense must, by definition, entail evidence of the defendant's prior criminal conduct. *McKay v. State,* 707 S.W.2d 23, 31–32 (Tex.Crim.App.1985). If the complained of evidence does not demonstrate the defendant was in some way connected to an offense, an extraneous offense is not established. *Harris v. State,* 738 S.W.2d 207, 224 (Tex.Crim.App.1986).

In the present case, neither the prosecution's nor witnesses' statements implicated James in an extraneous offense. The statements do not even imply any prior offense was committed. The ambulance operator's statement, "we have a gun" does not establish James was connected with another offense. The second reference to a weapon was nothing more than the prosecutor warning the witness not to mention anything regarding a weapon. Furthermore, the prosecutor's question, "Do you have a handgun, James?" does not rise to the level of an extraneous offense.

 Nevertheless, even if we were to conclude the statements by the prosecution and witnesses were evidence of an extraneous offense, the trial court's instructions to disregard cured the prejudicial effect. *Ovalle v. State*, 13 S.W.3d 774, 783–84 (Tex.Crim.App.2000). The mere asking of an improper question will not constitute reversible error unless the question results in obvious harm to the accused. *Brown v. State*, 692 S.W.2d 497, 501 (Tex.Crim.App.1985). An instruction to disregard will be presumed effective unless the facts of the case "suggests the impossibility of withdrawing the impression produced on the minds of the jury." *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim.App.1988) (citing *Hatcher v. State*, 43 Tex.Crim. 237, 65 S.W. 97, 98 (1901)). Although not expressly adopted as exhaustive or definitive, the Texas Court of Criminal Appeals has relied on several factors to determine whether an instruction to disregard cured the prejudicial effect. *Id.*; *Veteto v. State*, 8 S.W.3d 805, 811 (Tex. App.-Waco 2000, pet. ref'd). The factors include: 1) the nature of the error; 2) the persistence of the prosecution in committing the error; 3) the flagrancy of the violation; 4) the particular instruction given; 5) the weight of the incriminating evidence; and 6) the harm to the accused as measured by the severity of the sentence.

*Waldo,* 746 S.W.2d at 754; *Veteto,* 8 S.W.3d at 811.

Applying these factors to the case at hand, we conclude any prejudice caused by the statements was cured by the trial court's instructions. Our review of the record reveals the first reference to a "gun" was only a reference to the can of mace; the second reference to a "weapon" was the prosecutor's attempt to admonish the witness not to mention it again; and the final reference did not imply owning a weapon was an act of misconduct or an extraneous offense. Each of these references was followed immediately by a sustained objection and a curative instruction by the trial court. The prejudicial effect of the question by the prosecution was not of such a nature that it could not be cured by an instruction to disregard. *Id.* Thus, the trial court did not err in refusing to grant a mistrial on this basis. We overrule James's third point.

Accordingly, we affirm the judgment of the trial court.