# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00111-CV

**Lynda S. David, Appellant**

**v.**

**Williamson County, Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 03-561-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## M E M O R A N D U M  O P I N I O N

Appellant Lynda S. David was injured after falling while descending stairs inside a Williamson County courthouse, where she had gone to pay delinquent property taxes. David sued Williamson County for noncompliance with the Americans with Disabilities Act (ADA), asserting that she was excluded from participating in services, programs, or activities of a public entity because (1) the delinquent-property-tax office was in the basement of the courthouse and there was no elevator access to that floor, (2) the stairs leading to the basement offices were unusually long, and the handrail was inadequate when she attempted to grab it to avoid falling, (3) she was directed to the lower-level office by an unidentified individual she believed to be a property-tax-department employee, and (4) that individual failed to offer her another location or method for paying her delinquent taxes even though her disability was apparent. *See* 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). The trial court granted Williamson County's motion for summary judgment and rendered judgment that David take nothing on her ADA claim. In a single issue on appeal, David asserts that summary judgment was improper because there are fact issues about whether she was denied access to the delinquent-property-tax office or an accessible alternative location and whether she was provided reasonable accommodations for her physical limitations. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewing the disputed and uncontroverted evidence in the light most favorable to David as the non-movant, the record shows as follows.[1] David has rheumatoid arthritis and is considered to be "disabled" or "handicapped" for purposes of receiving social security disability benefits. In 2001 Williamson County notified David by letter that she owed delinquent property taxes and that her home was subject to foreclosure if the taxes remained unpaid. The delinquent tax letters used by the county at that time instructed taxpayers to pay their delinquent taxes at the "Tax Office" or "Williamson County Tax Office," and provided an address for the tax office in the historic Williamson County courthouse (known as "the old courthouse"). The address provided on delinquent-tax letters in 2001 included a suite number that was on the entrance level of the

---

[1] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(i). Accordingly, we need not repeat them for purposes of our analysis.

courthouse, and there were no written instructions to taxpayers to go to the basement area of the old courthouse.

In response to the delinquent-tax notification, David went to the old courthouse in July 2001 to pay her delinquent taxes. She was accompanied by her adult daughter and, due to her physical condition, was walking with a cane. Upon her arrival at the courthouse, she entered the building through the south entrance and encountered no difficulties in doing so. In the first office to the right after she entered the building, she inquired where to go to pay delinquent property taxes. She and her daughter believed that the individual they were speaking to was a tax-department employee. Based on the courthouse door that David and her daughter entered, however, the first office to the right would have been the elections-department office. In any event, the individual in that office informed David and her daughter that the delinquent-tax office was "[o]ut the door to the right" and "down the stairs." However, the tax-department office in the basement was not actually the principal location for paying delinquent property taxes; instead, the basement offices were occupied by delinquent-tax attorneys and some employees of the Tax Assessor Collector's Office. The office designated for payment on the delinquent tax notice, which was the principal location for payment of property taxes and was listed in the county's delinquency letters, was actually located on the first floor, just past the staircase to the basement. Nonetheless, David's daughter testified that she and her mother were not informed that the taxes were to be paid on the first floor.

Following the oral directions they had received, David and her daughter proceeded to the staircase because (1) the elevator in the building did not go down to the basement, (2) they had neither asked for nor been offered another option for accessing the department located in the

3

basement, and (3) no signs concerning basement access for disabled persons were posted. Although the stairway was "very steep," David believed she could safely descend the staircase and undertook to do so using her cane and holding onto her daughter but without holding onto the hand railing because she was unable to wrap her hand around it due to the manner in which it was affixed to the wall.[2] Just shy of the bottom landing, David separated from her daughter. At that point, David lost her balance and attempted to grab the hand railing, but could not do so, she said, because it was highly polished to the point that it was slick and because she could not wrap her hand around it. When she fell, she broke bones in her right hand, injured her back and neck, and suffered ruptured stitches and other complications related to intestinal surgery she had undergone six months prior.

The day after David fell, her daughter returned to the old courthouse and paid the delinquent taxes in the delinquent-tax office in the basement of the courthouse.

David initially sued Williamson County for negligence and premises liability, seeking compensation for $30,000 in medical bills and other damages for physical injuries as well as attorney's fees.[3] Williamson County moved for summary judgment on those claims, but before the

---

[2] David's deposition testimony is as follows:

Q:    So . . . there wasn't anything about the staircase that led you to believe you couldn't make it to the bottom, then, when you were at the top?

A:    No, there wasn't.

Q:    So is it fair to say it didn't seem unusually dangerous to you?

A:    No, it didn't. It just seemed pretty steep and long down there and very short steps. But I thought I could handle it.

[3]    David alleged that her degree of disability increased markedly after the fall, and consequently, she has been unable to fully perform physical activities that she had previously been

4

hearing on Williamson County's dispositive motion, David amended her petition to add a claim under the ADA. Although Williamson County did not amend its summary-judgment motion to address the newly added ADA claim, the trial court granted summary judgment in Williamson County's favor on all of David's claims.

In a prior appeal to this Court, we held that the trial court erroneously dismissed David's ADA claim because Williamson County had not moved for summary judgment on that claim. *David v. Williamson Cnty.*, No. 03-09-00391-CV, 2010 WL 1507824, at *1 (Tex. App.—Austin Apr. 15, 2010, no pet.) (mem. op.). We reversed the judgment and remanded the cause as to the ADA claim. *See id.* On remand, Williamson County filed a second traditional and no-evidence motion for summary judgment on the ADA claim, which the trial court granted. Only the ADA claim is at issue in the present appeal.

On appeal, David contends the trial court erroneously granted Williamson County's motion for summary judgment on her ADA claim because fact issues exist as to whether (1) she "received notice of any designated area at which she would have alternative access to the services of the county's delinquent tax office to pay her taxes other than the basement office where she was directed," (2) she was entitled to and deprived of a reasonable accommodation, and (3) the individual who directed her to the basement knew or should have known about her physical limitations because she was walking with a cane.

---

able to perform for herself, including washing and combing her hair, taking a bath, getting up and down out of bed or a chair, riding in a car for distances of more than ten miles before experiencing pain and swelling in her feet and legs, and activities causing pain in her neck. She also asserts that her level of daily pain increased after the incident.

## DISCUSSION

Title II of the ADA, which is applicable to public entities, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a prima facie violation of Title II, David must demonstrate that (1) she is a qualified individual within the meaning of the Act; (2) she was excluded from participation in, or is being denied benefits of, services, programs, or activities for which Williamson County is responsible, or is otherwise being discriminated against; and (3) such exclusion, denial of benefits, or discrimination is by reason of her disability. *See Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997). Williamson County's summary-judgment motion challenged only the second and third elements. Williamson County also asserted that there is no evidence of intentional discrimination, which is required to recover compensatory damages under Title II. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

In this case, David contends that she was denied access to or denied the benefits of Williamson County's tax-payment services or programs due to inaccessibility of the tax-office facilities. With regard to the interplay between facility access and program access, Title II's regulations state:

> Except as otherwise provided in [28 C.F.R.] § 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

6

28 C.F.R. § 35.149. In achieving compliance with the ADA, the regulations differentiate between structures built before the ADA took effect on January 26, 1992 ("existing facilities") and facilities built or altered after that date. *See Tennessee v. Lane*, 541 U.S. 509, 532 (1978); *see also* 28 C.F.R. §§ 35.150 (regulations for existing facilities), .151 (regulations for new construction and alterations). The accessibility requirements for existing facilities are less stringent and more flexible than for new facilities, and special consideration is given to buildings that qualify as historic properties. *See* 28 C.F.R. §§ 35.150-.151; 36.405. It is undisputed that the old courthouse in this case qualifies as both an existing facility and a historic property.

For existing facilities, "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." *Id.* § 35.150(a). However, a public entity is not required "to take any action that would threaten or destroy the historic significance of a historic property; or . . . [would result in] a fundamental alteration . . . of a service, program, or activity or in undue financial and administrative burdens." *Id.* § 35.150(a)(2), (a)(3). Furthermore, "[a] public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance." *Id.* § 35.150(b)(1). "Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000). "[I]n the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to

7

alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services." *Lane*, 541 U.S. at 532; *see also James v. State*, 89 S.W.3d 86, 89 (Tex. App.—Corpus Christi 2002, no pet.) ("The regulations of Title II of the ADA . . . do not require a public entity to make existing facilities wheelchair accessible in every respect as long as the services, programs and activities offered are otherwise accessible to the plaintiff."). "Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes." *Lane*, 541 U.S. at 532.

In the present case, the evidence reflects that on July 17, 2001 the old courthouse was accessible to disabled individuals at the south entrance. The affidavit of Deborah Hunt, Williamson County Tax Assessor-Collector, conclusively establishes that a designated location for payment of delinquent taxes was the Property Tax office located on the first floor of the old courthouse.[4] There is no evidence that on July 17, 2001 this office was inaccessible to disabled individuals. David contends that the evidence conflicts as to whether the first floor office was actually the principal or only location for paying taxes, citing evidence that (1) she received directions to the basement to pay

---

[4] David generally contends that the affidavits submitted in support of Williamson County's motion for summary judgment are "self-serving statements" that are insufficient to support summary judgment because "they are not 'readily controvertible' since they require the non-movant to disprove the content of the witness'[s] mind." David does not specifically identify which affidavits or statements are objectionable, but we conclude that Williamson County's evidence concerning the location of the tax department offices and contents of the tax notice are competent summary judgment evidence upon which summary judgment may be based. This evidence is not properly characterized as subjective or conclusory opinions and, instead, is evidence of circumstances that could have been readily controverted. *See* Tex. R. Civ. P. 166a(c) ("A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.").

8

her taxes from an unidentified person and (2) her daughter actually paid the delinquent property taxes in the basement office the day after David was injured. However, to the extent this evidence may raise a fact issue concerning the "proper" location for paying delinquent taxes, the factual dispute is immaterial. The only material issue is whether there was *any* accessible location for David to pay her delinquent property taxes, and on this point the evidence is uncontradicted. The summary-judgment evidence shows as a matter of law that there was an accessible location on the first floor of the old courthouse, to which David had access upon entering the building.

David contends that Williamson County is nonetheless liable for her injuries because an unidentified individual who appeared to be a county employee told her that the tax office was in the basement, which was physically inaccessible to her, and did not offer an alternative location. If David's physical limitations precluded or hindered her from accessing the basement and she lacked knowledge of the alternative, accessible location or believed the method of access was inadequate, it was incumbent upon her to request an accommodation for limitations resulting from her disability. *See Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. App'x 287, 297 (5th Cir. 2012) ("[S]imply asking a few questions of the event venue's staff for more suitable accommodations is likely to be more effective and consistent with case law than remaining silent and resorting to a Title II discrimination claim in the federal court system."); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (observing general rule under ADA that defendant must not only have knowledge of disability "but also of the physical or mental limitations resulting therefrom"); *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 163-64 (5th Cir. 1996) ("[T]he ADA requires employers to reasonably accommodate limitations, not disabilities."); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th

9

Cir. 1995) (stating that "[t]he ADA does not require clairvoyance" and affirming summary judgment in favor of employer who fired disabled employee without knowledge of disability); *cf. Randolph v. Rodgers*, 170 F.3d 850, 858-59 (8th Cir. 1999) ("While it is true that public entities are not required to guess at what accommodations they should provide, the requirement does not narrow the ADA or [Rehabilitation Act] so much that the Department of Corrections may claim Randolph failed to request an accommodation when it declined to discuss the issue with him.").

David maintains, however, that she was not obligated to request an accommodation because her physical limitations were obvious from her manner of walking and use of a cane when she asked for directions to the tax office and was directed to the office in the basement. *See Greer*, 472 Fed. App'x at 296 ("[A] disabled person's failure to expressly 'request' an accommodation is not fatal to an ADA claim where the defendant otherwise had knowledge of the individual's disability and needs but took no action. . . . [T]here is a balance to be struck between a disabled individual's need to request accommodations when limitations are not obvious or apparent and a public entity's duty to provide accommodations without further notice or a request."). However, a reasonable fact finder could not conclude that David's limitations and need for accommodation were obvious in light of David's testimony that she did not request an accommodation because she did not subjectively perceive an impediment to descending the stairs. Moreover, there is no evidence that the person who gave David directions to the basement knew or should have known that David herself would be descending the stairs as opposed to her adult daughter who accompanied her.

The only evidence David produced in this case concerns accessibility to the basement of the courthouse facility. She produced no evidence regarding the unavailability of access to

10

Williamson County's programs or services. In comparison, Williamson County conclusively established that the tax department services were available at an alternative accessible location. David's evidence concerns her singular experience in which she expressed no need for alternative access to the tax office. David produced no evidence that she gave Williamson County an opportunity to accommodate her limitations, and although she herself descended the staircase believing she could do so safely, she contends that the Williamson County employee who gave her directions should have had a greater understanding of her physical limitations and need for accommodation than either she or her daughter possessed. *See Greer*, 472 Fed. App'x at 298 (summary judgment for defendant proper on plaintiff's ADA claim where she failed to produce evidence controverting defendant's evidence of access to football program; although dissatisfied with type of access given, plaintiff did not request additional accommodations or alternate seating location and did not controvert evidence that defendant provided program accessibility to disabled individuals in general); *see also Taylor*, 93 F.3d at 165 ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, . . . the initial burden rests upon the employee . . . to specifically identify the disability and resulting limitations and to suggest the reasonable accommodations.").

As a matter of law there was no violation of Title II of the ADA because the summary-judgment evidence establishes that there was an alternative accessible site on the first floor of the old courthouse where David could pay her delinquent property taxes. In addition, there is no evidence that David requested an accommodation to pay her taxes in a location that was accessible to her or that the need for such accommodation was obvious in the absence of such a request.

11

## CONCLUSION

We affirm the trial court's summary judgment in Williamson County's favor because the evidence conclusively establishes that David was not denied access to Williamson County's services or programs.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed:   December 31, 2013

12