# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00112-CR

**Joel Contreras-Aguilar, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
### NO. CR-10-0442-B, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Joel Contreras-Aguilar was convicted of two counts of aggravated sexual assault of a child, one count of sexual assault of a child, and two counts of indecency with a child by contact. *See* Tex. Penal Code §§ 21.11, 22.011, .021. Contreras-Aguilar was sentenced to ten years' imprisonment for the indecency and sexual-assault offenses and to forty years' imprisonment for the aggravated sexual-assault offenses. On appeal, Contreras-Aguilar contends that his trial attorney provided ineffective assistance of counsel. We will affirm the trial court's judgments of conviction.

## BACKGROUND

Contreras-Aguilar was convicted of committing the above crimes in 2009 against two of his stepdaughters, J.O. and her younger sister E.H. Regarding J.O., Contreras-Aguilar was convicted of sexual assault for penetrating her sexual organ with his finger and of indecency by contact for touching her genitals. Regarding E.H., Contreras-Aguilar was convicted of two

counts of aggravated sexual assault for penetrating her sexual organ with his finger and one count of indecency by contact for touching her genitals.[1] During the trial, J.O. and E.H. testified regarding those offenses and others. In addition, their sister Z.O. also testified regarding sexual abuse that Contreras-Aguilar committed against her around the same time and about an incident of abuse involving E.H. The State called other witnesses during trial, including the three sisters' mother, other family members, forensic interviewers, and several law-enforcement personnel. During the trial, evidence was presented showing that Contreras-Aguilar returned to Mexico in 2009 around the time that an allegation of abuse was made and that he did not return until approximately nine years later in 2018.

In her testimony, the sisters' mother explained that she married Contreras-Aguilar and that he moved in with her and her children. Further, the mother related that J.O. woke her up one evening and said that Contreras-Aguilar "was touching her on her private parts." Next, the mother testified that she confronted Contreras-Aguilar about the allegations, told him to leave the house after he denied touching J.O., and called the police. Additionally, the mother explained that she had not seen Contreras-Aguilar since he left their home and that she received a phone call from someone she did not know informing her that Contreras-Aguilar had returned to Mexico. During her cross-examination, the mother testified that she never observed Contreras-Aguilar touch any of her children inappropriately and that the police never searched her home for any evidence.

Next, J.O. testified that Contreras-Aguilar started touching her inappropriately after he married her mother. Regarding the first incident, J.O. explained that he touched her

---

[1] The indictment originally alleged that Contreras-Aguilar also caused E.H.'s mouth to contact his sexual organ and that he touched E.H.'s breast with the intent to arouse or gratify his sexual desire. During the trial, the State abandoned the additional indecency count, and the jury acquitted Contreras-Aguilar of the additional count of aggravated sexual assault of a child.

"vagina area" outside her clothing while she was asleep on the couch and that he walked away when she woke up. Additionally, J.O. related that Contreras-Aguilar engaged in that same type of behavior several times. Regarding another incident, J.O. testified that Contreras-Aguilar placed his hands under her clothes and inserted his fingers past the lips of her vagina. Next, J.O. testified that she decided to talk with Z.O. and E.H. about the abuse, that her conversation with her two younger sisters made her feel like she needed to protect them, and that she decided to tell her mother about the abuse. J.O. also related that she told her mother the next time that Contreras-Aguilar tried to touch her, that he denied the allegations before leaving the home, that she and members of her family went to the police, and that she talked with a forensic interviewer about the abuse. Further, J.O. explained that nothing else happened in the case until 2018 when Contreras-Aguilar was arrested. During her cross-examination, J.O. stated that E.H. did not initially mention whether Contreras-Aguilar had touched her inappropriately but later said that he had.

Once J.O. finished testifying, Z.O. testified about how Contreras-Aguilar abused her and explained that he would "dry hump[]" her "and then grab[] her" while her clothes were on, that the abuse happened multiple times, that he would get an erection, and that his penis would touch her butt. Additionally, Z.O. discussed an incident involving E.H. that E.H. had related to her. Specifically, Z.O. testified that E.H. said that Contreras-Aguilar "took out his private part" and made her touch it with her feet. Moreover, Z.O. related that after Contreras-Aguilar left their home, she was interviewed by a forensic interviewer but did not tell the interviewer about any abuse because she "was so scared." During her cross-examination, Z.O. admitted that her memory of the events was stronger at the time of the forensic interview when she did not inform the interviewer that any abuse occurred. Further, Z.O. testified that she never

3

saw Contreras-Aguilar touch anyone else and that she and her sisters had a meeting to discuss him before talking with their mother.

Following the testimony of several other witnesses, E.H. testified regarding abuse that she experienced while Contreras-Aguilar lived with her family. In her testimony, E.H. generally related that Contreras-Aguilar touched her vagina with his hands more than once and that he inserted his finger into her vagina on more than four occasions. Regarding one incident, E.H. explained that Contreras-Aguilar inserted his fingers into her vagina while they were in his truck, that her vagina started bleeding, that he tried to force her to perform oral sex on him, that his penis touched her cheek and lips, and that she jumped out of the truck. Regarding another incident, E.H. testified that Contreras-Aguilar inserted his finger into her vagina while she was in her mother's bedroom after he turned on a pornographic movie. E.H. also related that she did not discuss the abuse with the forensic interviewer because she was not comfortable discussing the abuse. During her cross-examination, E.H. admitted that memories fade over time, that she never told the interviewer about any of the abuse, that she told the interviewer that Contreras-Aguilar never engaged in any sexual activity with her, and that she told another interviewer years later that the case was not as strong if it depended solely on J.O.'s testimony.

During the guilt-innocence phase, a director for a child advocacy center testified that child abusers might groom their victims by exposing them to explicit materials and by giving them illegal drugs.

After considering the evidence presented at trial, the jury found Contreras-Aguilar guilty of the charged offenses. Contreras-Aguilar appeals the trial court's judgments of conviction.

4

**STANDARD OF REVIEW**

On appeal, Contreras-Aguilar argues that his trial counsel provided ineffective assistance. To demonstrate ineffective assistance of counsel, a defendant must establish by a preponderance of the evidence both deficient performance by counsel and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). First, the defendant must show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687-88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). Next, the defendant must show the existence of a reasonable probability that the result of the proceeding would have been different absent his counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See Burch*, 541 S.W.3d at 820; *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). "It will not suffice for [the defendant] to show 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Appellate courts reviewing an ineffectiveness claim are highly deferential to trial counsel and "indulge in a strong presumption that counsel's conduct was *not* deficient." *See Nava*, 415 S.W.3d at 307-08; *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim.

5

App. 2005) (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). To rebut that presumption, a claim of ineffective assistance must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *Goodspeed*, 187 S.W.3d at 392. Evaluations of effectiveness are based on "the totality of the representation." *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim "is generally undeveloped." *Goodspeed*, 187 S.W.3d at 392; *see Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Goodspeed*, 187 S.W.3d at 392. If a trial attorney has not been afforded that opportunity, a reviewing court should not find him to be deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308 (quoting *Menefield*, 363 S.W.3d at 593).

## DISCUSSION

In one issue on appeal, Contreras-Aguilar presents several sets of arguments asserting that his trial counsel provided ineffective assistance by failing to object to impermissible hearsay testimony, to object to the admission of extraneous offenses, to call any witnesses at either phase of the trial, to engage a mitigation expert, and to investigate and present mitigating evidence.

6

**Hearsay**

In his first set of arguments, Contreras-Aguilar contends that his counsel provided ineffective assistance by failing to make a hearsay objection during the victims' mother's testimony when she provided the following testimony regarding an anonymous phone call that she received after he left their home:

> [State]: How long was it after [Contreras-Aguilar] left that you got that phone call about Mexico?

> [Mother]: I can't really recall that, because I just remember they gave me -- I don't know what day was it, when was it.

> [State]: Was it months, years later? Do you know? And it's okay if you don't.

> [Mother]: No. Like -- I'll lie if I say a month. I really do not -- I just know I received that call, saying -- it was a lady saying that he was leaving to Mexico. That way, he can't get caught. That's what she said. But it was a private number.

After referencing the testimony summarized above, Contreras-Aguilar argues that the testimony was hearsay "evidence of guilt suggesting [that he] fled the country to avoid prosecution." Further, Contreras-Aguilar argues that the erroneous admission of this testimony prejudiced him because the evidence was unreliable and because the evidence improperly bolstered the testimony by the alleged victims.

As set out above, Contreras-Aguilar did not present an ineffectiveness claim in a motion for new trial, and therefore, no hearing addressed any ineffectiveness claim. Accordingly, the record is silent regarding trial counsel's reasons for not objecting to the above quoted testimony. Because the record is silent as to why trial counsel failed to object, Contreras-Aguilar "has failed to rebut the presumption this was a reasonable decision." *See Thompson v.*

7

*State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). We do not believe that "this failure to act amounted to an error sufficiently egregious to satisfy the first prong of *Strickland* as a matter of law." *See id.* Given that the State's question did not indicate that it was trying to elicit the mother's statement that Contreras-Aguilar fled to avoid being arrested, trial counsel "*at that moment* may have reasonably decided that the testimony" was admissible and that "an objection was not appropriate." *See id.* Alternatively, trial counsel may have reasonably concluded that objecting might have further called "the jury's attention to the testimony." *See Chavez v. State*, Nos. 03-11-00624—00625-CR, 2013 WL 490928, at *4 (Tex. App.—Austin Feb. 6, 2013, no pet.) (mem. op., not designated for publication). Moreover, prior to trial, Contreras-Aguilar admitted during a recorded interview with the police that he went to Mexico around the time that the police became involved in this case. Although Contreras-Aguilar stated during the interview that he went to Mexico for business purposes, trial counsel could have reasonably believed that the State would introduce this recorded interview, which it did, and that this recording plus the timeline of events that would be established by the witnesses would independently support a reasonable inference that he fled the country to avoid being arrested.

Under these circumstances, we cannot conclude that trial counsel's failure to object was not motivated by sound trial strategy or was so outrageous that no competent attorney would have behaved in a similar fashion. Accordingly, we conclude that Contreras-Aguilar has failed to establish that trial counsel provided ineffective assistance on this basis. *See Strickland*, 466 U.S. at 687-88.

**Extraneous Offenses**

In his second set of arguments, Contreras-Aguilar argues that trial counsel provided ineffective assistance by failing to object to the admission of evidence of extraneous

8

offenses. When presenting this claim, Contreras-Aguilar refers to an exchange between the State and trial counsel outside the presence of the jury at the beginning of the trial in which trial counsel said he had no objection to the State's plan to present evidence regarding the following acts: Contreras-Aguilar providing J.O. with cocaine, touching J.O.'s vagina with his hands on occasions other than the incident alleged in the indictment, penetrating J.O.'s vagina with his finger on occasions other than the incident alleged, penetrating E.H.'s vagina with his finger on occasions other than those incidents alleged, showing E.H. pornography while touching her genitals, exposing his penis to E.H., and attempting to force E.H. to touch his penis with her feet. After referencing the exchange summarized above, Contreras-Aguilar argues that trial counsel should have objected to the evidence because it amounted to improper character conformity evidence prohibited by Rule of Evidence 404 and because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Rule 403. *See* Tex. R. Evid. 403, 404. Further, Contreras-Aguilar contends that trial counsel's stipulation to those acts "established necessary elements of the offenses alleged, denied [him] any chance of refuting the State's evidence, and constitutes ineffective assistance of counsel."[2]

As an initial matter, we note that trial counsel did not stipulate to the evidence or otherwise concede that the offenses occurred. Instead, trial counsel agreed that evidence related to the sexual offenses was admissible under article 38.37 of the Code of Criminal Procedure.

---

[2] When presenting this set of arguments, Contreras-Aguilar quotes several pages of the hearing discussing the offenses that the State intended to introduce. One of the quoted sections mentioned Z.O., but the State explained in that exchange that there would be a formal hearing later "before we get into any of the offenses" allegedly involving "her that will be extraneous in nature" and did not identify any offenses that it planned to offer regarding Z.O. When presenting his arguments in his brief, Contreras-Aguilar does not refer to Z.O., to any offense involving Z.O., or to the subsequent hearing in which trial counsel did object to the State's plan to introduce evidence of offenses involving Z.O. Accordingly, we limit our discussion to the offenses involving J.O. and E.H. mentioned by Contreras-Aguilar in his brief and summarized above.

9

That provision applies to trials for certain sexual offenses, including the offenses at issue in this case, and authorizes the admission of evidence regarding extraneous offenses or acts "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence." Tex. Code Crim. Proc. art. 38.37, §§ 1(b), 2(b); *see Hitt v. State*, 53 S.W.3d 697, 704-05 (Tex. App.—Austin 2001, pet. ref'd) (recognizing that, in cases involving sexual abuse of children, article 38.37 supersedes application of Rule of Evidence 404). One portion of article 38.37 requires the admission of "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense . . . for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. art. 38.37, § 1(b).

Evidence that Contreras-Aguilar provided cocaine to J.O. and showed pornography to E.H. "falls within the type of evidence allowed under article 38.37" because it showed his attempts to lure or groom them and, therefore, was relevant to the state of mind of Contreras-Aguilar, E.H., and J.O. and to the earlier and subsequent relationship between him and the sisters. *See Odom v. State*, Nos. 14-11-00206—00212-CR, 2012 WL 1964580, at \*5 (Tex. App.—Houston [14th Dist.] May 31, 2012, no pet.) (mem. op., not designated for publication); *see also Hinojosa v. State*, 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (explaining that evidence regarding extraneous offenses against victim "were relevant to show the state of mind of [defendant] and [victim] and the previous and subsequent relationship between" them).

Regarding the evidence that Contreras-Aguilar repeatedly touched J.O.'s and E.H.'s vaginas and penetrated their vaginas with his fingers, those incidents "involved the same conduct alleged in the indictment." *See Brown v. State*, 6 S.W.3d 571, 575 (Tex. App.—Tyler

1999, pet. ref'd). When making its case, the State may put on "evidence of multiple occurrences of the acts alleged in the indictment, even if the evidence shows that such acts were committed on different dates from the dates shown in the indictment." *Id.* (quoting *Worley v. State*, 870 S.W.2d 620, 622 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)); *see also Flores v. State*, Nos. 07-06-00338—00340-CR, 07-06-00342—00343-CR, 2008 WL 3930291, at *2 (Tex. App.—Amarillo Aug. 27, 2008, no pet.) (mem. op., not designated for publication) (noting that "[i]t is permissible for the State to present evidence of multiple occurrences of the acts alleged in the indictment"). Accordingly, evidence of a defendant's "multiple commissions of the sexual acts charged in the indictment are not extraneous offenses for evidentiary purposes" and, instead, merely quantify the occurrence of the offenses. *Brown*, 6 S.W.3d at 575. That type of evidence is admissible, and trial counsel was not ineffective for failing to object to the admission of this evidence under Rule 404. *See id.* at 576.

Even if the evidence described above constituted evidence of extraneous offenses, that evidence and the evidence that Contreras-Aguilar exposed his penis to E.H. and attempted to force her to touch his penis with her feet were admissible "under article 38.37 to show the relationship between" him and the sisters "and to show their respective states of mind." *See Burke v. State*, 371 S.W.3d 252, 256-57 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *see also Taylor v. State*, 509 S.W.3d 468, 476 (Tex. App.—Austin 2015, pet. ref'd) (noting that evidence of extraneous offense was relevant to defendant's "state of mind for the offenses at issue as well as the nature of the prior relationship between" him and victim); *James v. State*, 89 S.W.3d 86, 89 (Tex. App.—Corpus Christi 2002, no pet.) (explaining that "[a]n extraneous offense is defined as any act of misconduct, whether prosecuted or not, that is not shown in the charging papers").

11

Accordingly, any objection under Rule 404 "by defense counsel would have been properly overruled" either "because article 38.37 applies to evidence of the . . . extraneous acts," *see Burke*, 371 S.W.3d at 257, or because some of the offenses were not extraneous offenses covered by Rule 404, *see Brown*, 6 S.W.3d at 576. Trial counsel was not ineffective for failing to make a futile objection to this evidence under Rule 404. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *see also McDaniel v. State*, No. 01-18-00598-CR, 2019 WL 3022683, at *3 (Tex. App.—Houston [1st Dist.] July 11, 2019, pet. dism'd) (mem. op., not designated for publication) (noting "[i]n the context of admission of evidence of extraneous-act sexual assaults in sexual-assault cases," that "trial counsel's assistance generally is not held to be ineffective for the failure to have objected to the extraneous-act evidence" and stating that this type of evidence is often admissible).

In this issue, Contreras-Aguilar also asserts that his trial counsel was ineffective for failing to object to this evidence under Rule of Evidence 403. *See Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (observing that Rule 403 can be applied to evidence offered under article 38.37). That Rule provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence

12

when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted); *see also Hammer*, 296 S.W.3d at 561-62 (observing that in sexual-offense cases Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such 'he said, she said' cases").

Although this is not an exhaustive list, courts generally balance the following factors when performing a Rule 403 analysis: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *see Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). In this context, "probative value" refers to how strongly evidence makes the existence of a "fact of consequence" "more or less probable" and to how much the proponent needs the evidence, and "unfair prejudice" refers to how likely it is that the evidence might result in a decision made on an "improper basis," including "an emotional one." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). Moreover, "in a child sexual abuse case, the proponent's need for the extraneous-offense evidence to combat the defendant's challenge to the complainant's credibility is considered in determining admissibility." *See Adams v. State*, No. 02-18-00147-CR, 2018 WL 3581010, at *4 (Tex. App.—Fort Worth July 26, 2018, pet. ref'd) (mem. op., not designated for publication).

Regarding the first factor, as discussed earlier, the evidence was probative of the relationship between Contreras-Aguilar and the victims and of their respective states of mind.

13

The evidence establishing the extent of the abuse also helped to explain why E.H. may have initially denied that anything inappropriate occurred. *Cf. Walker v. State*, 4 S.W.3d 98, 103 (Tex. App.—Waco 1999, pet. ref'd) (noting that evidence showing that victim was "subjected to numerous sexual and physical assaults" by stepfather could explain why victim "did not report . . . abuse sooner"). Accordingly, this factor weighs in favor of admission. *See Burke*, 371 S.W.3d at 257-58. The second factor also weighs in favor of admission because the evidence pertaining to those offenses "was no more detailed" than the evidence pertaining to the charged offenses, *see id.* at 258, and because the trial court included an instruction in the jury charge explaining that the jury could only consider evidence of other crimes, wrongs, or acts if it first determined that those offenses occurred beyond a reasonable doubt and only for limited purposes, including establishing the state of mind of the defendant and the victims and establishing the previous and subsequent relationship between the defendant and victims, *see Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the impermissible inference can be minimized through a limiting instruction").

Turning to the time needed to present the evidence, we note that it is difficult to gauge the amount of time devoted to the extraneous acts and offenses because the testimony concerning those acts is interspersed among the testimonies of J.O., E.H., and Z.O. and intermixed with testimony regarding the charged offenses; however, we note that the guilt-innocence phase was held over three days, that the record is hundreds of pages in length, that the portions of the record containing the entirety of J.O.'s and E.H.'s testimonies is a little over a hundred pages in length, that Z.O. only briefly testified about an incident involving E.H., and that several witnesses besides the three sisters testified in this case. Arguably, this factor either weighs in favor of admission of the evidence or is neutral regarding admission. *Cf. Mcree v.*

14

*State*, No. 03-17-00021-CR, 2018 WL 1547278, at \*12 (Tex. App.—Austin Mar. 30, 2018, pet. ref'd) (mem. op., not designated for publication) (determining that trial court could have found that time factor either weighed in favor of admission or was neutral regarding admission of extraneous-offense evidence where testimony about extraneous offense took up 93 pages out of 500-page record).

Finally, regarding the State's need for the evidence, we note that through his opening statement and through his cross-examination of the State's witnesses, Contreras-Aguilar challenged the credibility of the victims and the thoroughness of the investigation by the police. *See Adams*, 2018 WL 3581010, at \*5 (noting in Rule 403 analysis that defendant "challenged the veracity of the complainants . . . and the quality of the investigation"). In addition, no physical evidence related to the charged offenses was admitted into evidence. Accordingly, this factor also weighs in favor of admission.

Given the presumption in favor of admissibility as well as the resolution of the factors discussed above, the trial court would not have abused its discretion by overruling a Rule 403 objection to the admission of the evidence. *Cf. Brown*, 6 S.W.3d at 579 (noting that for prosecutions of sex offenses against children, evidence of extraneous acts between complainant and defendant are usually more probative than prejudicial). Accordingly, Contreras-Aguilar has not shown that trial counsel's decision not to object under Rule 403 was not a legitimate trial strategy or that trial counsel's failure to object was so outrageous that no competent attorney would have acted in that manner. *See White*, 160 S.W.3d at 53.

For these reasons, we conclude that Contreras-Aguilar has not met his burden of establishing that trial counsel provided ineffective assistance of counsel because he has not

15

shown that trial counsel's failure to object under Rules 403 and 404 fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88; *Burke*, 371 S.W.3d at 258.

**Mitigation Evidence**

In his final set of arguments, Contreras-Aguilar contends that trial counsel provided ineffective assistance for interrelated reasons. First, Contreras-Aguilar argues that trial counsel was ineffective for failing to call any witnesses during either phase of the trial. Next, Contreras-Aguilar asserts that trial counsel was ineffective for failing to engage a mitigation expert and to investigate and present mitigating evidence during the punishment phase and contends that these failures "may have been unreasonable."

As an initial matter, we note again that Contreras-Aguilar did not file a motion for new trial asserting that trial counsel was ineffective and that no hearing addressed any ineffectiveness claim. *See Lopez v. State*, 462 S.W.3d 180, 183-84, 186-90 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (determining that trial counsel provided ineffective assistance of counsel for failing to investigate and present mitigating evidence where ineffectiveness claim was presented in motion for new trial and where evidence regarding ineffectiveness claim was presented in hearing on motion for new trial); *Lampkin v. State*, 470 S.W.3d 876, 904-07, 910-26 (Tex. App.—Texarkana 2015, pet. ref'd) (same).

Moreover, before a defendant can claim that his trial counsel provided ineffective assistance by failing to call witnesses, the defendant must show that there were witnesses available and that their testimonies would have helped him. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Brennan v. State*, 334 S.W.3d 64, 79 (Tex. App.—Dallas 2009, no pet.); *Tutt v. State*, 940 S.W.2d 114, 121 (Tex. App.—Tyler 1996, pet. ref'd). Absent this type of showing, an ineffectiveness claim regarding the failure to call witnesses fails. *Perez*,

16

310 S.W.3d at 894; *see also Lair v. State*, 265 S.W.3d 580, 594 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (explaining that "[t]he decision whether to present witnesses is largely a matter of trial strategy"). Similarly, an ineffectiveness claim "based on trial counsel's general failure to investigate" will fail absent "a showing of what an investigation would have revealed that reasonably could have changed the result of the case." *Straight v. State*, 515 S.W.3d 553, 568 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd); *see also White v. State*, No. 02-16-00034-CR, 2017 WL 370945, at *3 (Tex. App.—Fort Worth Jan. 26, 2017, no pet.) (mem. op., not designated for publication) (explaining that "to obtain relief on a failure-to-investigate claim, appellant" must establish what evidence would have been obtained and show that it would have benefited him).

In this case, Contreras-Aguilar has neither shown that witnesses were available to testify during either phase of the trial and that their testimonies would have helped him nor shown what evidence would have been obtained through an investigation or through a mitigation expert and how that evidence would have helped him. Accordingly, Contreras-Aguilar has not established that but for trial counsel's failure to call witnesses, to engage a mitigation expert, and to investigate and present mitigating evidence the outcome of the trial would have been different. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (cautioning reviewing courts against speculating "about the existence of" mitigating evidence and noting that "[i]neffective assistance of counsel claims are not built on retrospective speculation"); *Straight*, 515 S.W.3d at 568 (overruling ineffectiveness issue because defendant "did not present any evidence regarding what" investigation "would have revealed"); *Aguilar v. State*, No. 07-13-00317-CR, 2015 WL 1612098, at *2 (Tex. App.—Amarillo Apr. 10, 2015, no pet.) (mem. op., not designated for publication) (concluding that defendant did not meet her burden of establishing ineffective

17

assistance by failing to engage mitigation expert where she failed to show that she would have benefitted from testimony of mitigation expert); *Brennan*, 334 S.W.3d at 79 (overruling issue asserting that trial counsel was ineffective for failing to call witness when defendant failed to meet his burden of establishing that witness was available).[3]

For these reasons, we overrule Contreras-Aguilar's issue on appeal.

## CONCLUSION

Having overruled Contreras-Aguilar's issue on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed:   June 23, 2021

Do Not Publish

---

[3] In his brief, Contreras-Aguilar contends that the failure to call witnesses prevented trial counsel from presenting a defensive theory. Although trial counsel did not call any witnesses, trial counsel did present several defensive theories, including that J.O. fabricated the claims of abuse and persuaded her sisters to similarly make false claims against Contreras-Aguilar, that the police failed to perform an adequate investigation, and that it was not possible for the abuse to have occurred but not be observed given how many people were living in the home. As support for these theories, trial counsel, among other things, emphasized through his cross-examination of the witnesses and through his closing argument that there was no physical evidence to support that any abuse occurred, that the police never searched the house, and that E.H. and Z.O. initially denied that any abuse occurred when they were interviewed. *Cf. Powell v. State*, 63 S.W.3d 435, 436 (Tex. Crim. App. 2001) (noting in sexual-abuse case that defensive theory was presented in defendant's opening statement and through his cross-examination of complainant).